Okay, before we start the clock, I notice, okay, so you're Allstate. Correct. And are you, no, I mean, are you with Allstate or are you with Kia? You're with Kia. And then, all right, you have, will you be making all of the argument? I will be, Your Honor. Okay, so I just wanted to find out if we were, had any understanding. So each slide has 15 minutes, and if you wish to reserve any, you can let me know, and I'll try to respect that if possible. So you can state your name. Good morning, Your Honor. Garrett Leach on behalf of the appellant Allstate, and I would like to reserve two minutes of my time for rebuttal. Okay, thank you. Allstate and Kia have both put DriveWise into cars on products that are related to driver safety. Allstate put DriveWise in the cars seven years before Kia did. Now, Allstate's DriveWise products promote driver safety through real-time speeding alerts, real-time braking alerts, when you brake too hard it will send you a signal, crash detection, and other ways. Kia's DriveWise product similarly promotes driver safety through rear cross-traffic alerts, lane departure alerts that have signals, as well as forward collision alerts. Now, are these identical? Certainly not. Are they similar? We believe they are, and we believe they're very similar. In conducting the likelihood of confusion analysis, the district court departed from this court's legal guidance on at least two primary factors. I guess I'm just going to kind of tell you, because I'm going to ask the other side about this a little bit, what I'm struggling with here. Sure. So that if the judge put a jury, an advisory jury in place, I believe of what, eight people? Nine people, Your Honor. Nine people. And unanimously they said they were confused. In about an hour, yes. But we know from the law that it's advisory. Correct. And so as far as I could tell in my research, the court isn't required to follow that, and so I don't know why you would do it if you didn't have certain weight on it. But that being said, so if I look at this, if I didn't have that advisory jury, I don't think I'm confused here. Okay. All right. Just in terms of a lot of the things that the district court said in terms of it's a different place in the patent, they do different things. They seem to me to be quite different, and I don't think I would be confused. That being said, though, I'm wondering if nine people that are just ordinary people, and I'm assuming they're instructed on all of these, if they say they're confused, what do we do with that? Yeah. Two things, Your Honor. Even though I know that the court doesn't have to consider it. And we're not arguing that that's in any way binding on the court. I know. You're sticking with the law. We're sticking with the law. But the court said, because the other side moved to strike the jury, they said we don't need a jury here. And the court said, no, the Ninth Circuit has said, even though there's not damages here and so I don't need a jury, that really the issue of likelihood of confusion should go to a jury. And I'm going to keep the advisory jury. I'm going to keep it on as an advisory jury. I don't have to rely on it at the end of the day. But I think it's important because I really think the jury needs to decide this question. That's what he said, if you go back and read his opinion on the motion to strike the jury. So we went through the jury trial. We impaneled the jury. We had them spend their time there. We had the nine. Not very long. The jury didn't have the case very long, did they? No, they were within an hour, I think, and part of that was lunch. How many days was the trial, a day and a half? We had three, two days, I think, of testimony. Yeah. Okay. So that's one thing. And then the other thing is, Your Honors, because the judge erred on a couple of legal issues, we don't think he erred on those in the jury instructions. So that tells us when the law is correctly given to an ordinary observer, you come out the right way. Now, he changed the law in his conclusions in a couple of places, and we think that led to this. I'd be interested in hearing those. Yeah, so there's really two places where we think the law was wrong, and then we've got one clear factual error. The two places where the law was wrong was on the proximity of the goods, as opposed to following this court's, the Ninth Circuit's, law on that, where you're supposed to look at whether the products are complementary, whether they're sold to the same class of customers, and whether the products are similar in function. The court didn't do that. Instead, the court looked at whether the products were identical, not similar, but were identical, looked whether or not the two companies were direct competitors. Now, just to be clear, DriveWise isn't a brand of a car, and it isn't a type of insurance. They're both offsets of the two main companies' products, but it doesn't matter. You don't look at the primary directive. This court has said that. And then finally, what this court did, which it did several places, which was unfortunate, is it looked at where Kia tried to register their trademark. So Kia tried to register their trademark for vehicles. Now, let's be clear again. Kia does not use DriveWise on the name of a vehicle. You can't go buy a Kia DriveWise car. There is no such thing. So the fact that they tried to register it in that particular trademark classification should have no bearing. That's not how they're using it in commerce. But yet the court put a lot of weight on that particular factor. Well, I guess what, if that's a legal error or if that's just a different way of looking at things, because in your challenge of the district court's relatedness of goods factor, you argue it was legal error to consider some facts, such as price, and omit explicit consideration of others, such as whether the products are complementary or sold to the same class of purchasers. Why shouldn't we just view your argument as offering merely another permissible way, as opposed to the only way the district court could have viewed the factor? Because the Ninth Circle is very clear in sleek craft, I keep getting that wrong, that there's a three-factor test that you need to look at on proximity of the goods. And the court didn't do that. The court mentioned it, but then it went off and looked at other factors. You have to look at these three factors. I don't think there's any question, and the court didn't say there wasn't, that these goods are complementary. Having safety alerts in a car are complementary to one another. I don't think there's any question that it's the number two, that it's the same class of purchasers. If you buy a car, you have to buy car insurance. It's the same class of purchasers. Well, it isn't really, because when you, you know, I always go into, whenever I get my car, I go in, in the dealership, there's certain things that I know that I like, because I like those little things that go beep, beep, beep, when you're going to move over into someone, because I've gone beep, beep, beep enough times that I've decided I have avoided, it has been safe for me, you know, or when I back up, my car will, like, jolt, or, you know, keep me from running into things, all of those things. I never think about where it's coming from, and I'm not thinking about I'm going to cut my insurance rates. I'm just thinking, like, well, I would just like to be safe and not have an accident, and I drive 30,000 miles a year, and so I'm not thinking, so why isn't that? And you're exactly the kind of consumer we're worried about. You're a sophisticated buyer, but there's a lot of buyers. Thank you, but I don't know that I am. There's a lot of buyers that go out there, and they may get DriveWise, be it from Allstate or Kia, and it's got these alerts and these beeps on it, and they think, oh, my gosh, I've got lane detection now, and all of a sudden. You said they get DriveWise from Allstate, but they're not the same product. They're not identical, but this. You're not getting the same product if you buy what you sell versus what Kia sells. You're not going to get the same beep-beep from you. You're not getting the exact identical product. That's true, but you're getting alerts. Judge Callahan wants the beep-beep. My wife likes the beep-beep. Her car beeps too much for me. She loves that, though. You're not selling that. Yeah, we are. The Allstate gives you the beep-beep. It does. When you drive too fast, it beeps. When you brake too hard, it beeps, just like their beep-beep. When you drive too fast, it beeps. It's different than if somebody's coming up the left-hand side versus the right-hand side. That's what Kia is selling. Kia has different beeps. You're right. My car will stop if I'm going to back into a barrier. Right. It's a very different product. I'm not arguing they're identical, Your Honor, and the law is clear they don't need to be. And isn't that, on the proximity analysis that you argued they made legal error, the court concluded that they were not closely related. Yeah, but the reasons the court concluded they were not closely related were based on this trademark registration, were based on the fact that they weren't identical. Right. That's not what the law says. The law says they don't need to be identical. Does the law say that he could not have utilized those factors in making that determination? The law is clear that these are the three factors the Ninth Circuit requires. The law said you can't look at where the trademark was registered. That seems to me to be wrong. Sleekcraft says these are the three factors you look at for proximity of the goods. It doesn't say, and if you don't, you're in legal error. But I don't know that any case says these are the three factors, and if you don't follow them, district courts, you're in legal error. So I believe it does say you have to follow those. Well, it seems to me that the Sleekcraft, though, there is some flexibility to the analysis under Sleekcraft that the language, it says that. Let me take you to another area on that you, talking about Kia's intent. Yes. What is your best legal authority that knowledge of the plaintiff's mark requires rather than permits your assumption that the defendant intended to confuse the public? I would say, Your Honor, there are really two or three cases. The Academy of Motion picture, as well as the recent Adidas case, that say when one party knowingly adopts a mark similar to another's, reviewing courts presume that the defendant will accomplish its purpose. And then more recently in the Stone Creek case that I believe Your Honor was on, the district court found that you can't just ignore the presumption and say that it's a permissible type of thing. So in Stone Creek, the defendant admitted that it blatantly copied and began selling the same leather furniture branded with the mark of its now ex-business partner, the plaintiff. But here the district court found that Kia came up with the idea for the drive-wise mark independently of Allstate's mark, and that after becoming aware of Allstate's mark, Kia proceeded with plans to use the drive-wise mark because it believed there would be no consumer confusion, given that Allstate is an insurance company, not a car company. So, I mean, that's how the district court looked at it. Now, admittedly, the district court could have said, Hey, I think you're sleazy, I think you did this, you knew, you went ahead, you did it, you wanted people to be confused. And so that you would get more business. But I think Stone Creek, there's a way to distinguish it, and the district court seemed to do that, and so I'm not... Yeah, there are different facts, certainly, in Stone Creek. The only point we're making in Stone Creek is you can't ignore the presumption. Yes, the court could come back and say, You've rebutted the presumption by doing these things. The court didn't do that here. The court said, We're just, we're not going to look at the presumption, we're going to put this back on Allstate to prove there was deception to the public. And they put the burden on us to do that. And we think that's legal error. It had to at least assess and analyze the presumption, which it did not do. Did the district court say anywhere why he thought the jury was confused so quickly? I mean, you know, came to the confusion. No, he didn't. Well, we know that legally the district court didn't have to. There's no case that said that, but I'm just... No, Your Honor, we were quite confused ourselves when we got the opinion. Do you want to reserve the balance of your time for rebuttal? I want to make one more real quick statement, and this is just to answer a question that was earlier. The Haliki Films case, and this is a quote, the basic premise that a trademark provides protection only when the defendant uses the mark on directly competing goods, so identical goods, is no longer good law. Although this notion survived into the early 1900s, it has long been superseded. So that's to answer your question on that one particular point. That's a Ninth Circuit case. I'll reserve the rest 240, please, Your Honor. Thank you. Good morning. Good morning. May it please the Court, John Newcomb on behalf of the defendants. In light of the colloquy that I just listened to, I've reordered my planned remarks for this court. Yeah, talk to me about the elephant in the room here. I find it odd that the district court impaneled an advisory jury, apparently for the sole purpose of answering whether there is a likelihood of confusion, and then the court answered that question contrary to what a unanimous conclusion of the jury and without explaining why it was ruling contrary to the jury. Do you have an explanation for what happened here? I do not have an explanation for what the district court's rationale was back in the day. Why did the jury come to this conclusion if, you know, I basically said to the appellant, hey, if I were deciding this case, I don't think I'd be confused. But then confusion is one of those things. It's not like rocket science. I mean, I think the average person is probably the best person to say whether they're confused or not, as opposed to judges get confused for a lot of reasons but not usually, you know. I mean, really, you're talking about the average person that's in there, would they get confused? Well, so my thoughts are as follows. First of all, I think it's a mistake to characterize the advisory jury's decision here as nine consumers telling you they were confused by the mark. That's not what they were asked. Instead, they were given fairly detailed jury instructions, and they were asked to answer a mixed question of fact and law, which we know from the Levi-Strauss decision, which was en banc by this court in 1985, is a particularly tricky multifactor test which is entrusted to the district judge, not to the jury. And this, look, when I started by saying I can't tell you why Judge Otero impaneled the jury, I think I can tell this court what you should do with the advisory jury's decision, and that is nothing, and that's for two reasons. Well, of course. If we did something with it, you would lose. So can I make a point, though? This seems to be what we should do with it, and it seems to be Allstate's best argument is that there were legal errors. It does support, seems to support their conclusion that there may have been legal errors given to the jury compared to what he ultimately ruled on. And so while we can't do anything with it, I think it does make us want to look at this a little more closely, and I'd be interested if you could address these legal errors that have been claimed by Allstate and whether you agree with those or not. Because if there were legal errors, that advisory jury could be said that's why they weren't harmless. Certainly. So if I may, I'm going to address Your Honor's question in just a moment. But before I do, the verdict form here was a single question. It called for an ultimate conclusion on the mixed question of fact and law, whether they had met their burden to show a preponderance of the evidence, that there was a likelihood of consumer confusion. I can imagine a verdict form which may have been more useful to this court. For example, if there were discrete questions of fact which were put to the jury. For example, how did they find Kia's intent? Was it an intent to deceive, or was it something more innocuous? And, of course, we can go through all nine of the Sleetcraft factors. You're just saying whether it was a special verdict form or just a verdict form. I mean, neither one under the law. We can't consider either one. Even if it had been specific, we still couldn't have considered it. But that doesn't mean that we can't look at it and say, well, wait a second. Is there something here that we're missing? Because they got it, and maybe the answer is what Allstate's proposed, which is there was legal error here. Sure. So if I may, let me jump then to the legal error, which almost all of the legal error arguments go to factor three, the proximity analysis. I think the most notable assumption is the presumption of intent, and I'll get to that next. On factor three, the relatedness or proximity inquiry, Allstate argues that there were a number of errors. Number one, they argue that Judge Otero committed error when he focused on direct competition between our product and their service. And that's wrong a few ways. Number one, Judge Otero's recitation of the law was unquestionably correct. In paragraph 26 of his conclusions of law, he wrote, quote, if Allstate and Kia do not compete to any extent, the likelihood of confusion would be remote, or at least Allstate would bear the heavy burden of demonstrating that consumers were likely to be confused as to source or affiliation. If this court reads the Brookfield decision at page 1056, it is the exact same standard. In fact, with some of the same turns of phrase. Number two, Allstate nonetheless argues that this focus on competition was legal error because Reardon and Palm Wonderful inform us that it is not necessary to show direct competition in order to show proximity for factor three. But the holding of Brookfield that a lack of competition makes it harder to show proximity is not only not inconsistent with Reardon and Palm Wonderful, in fact, Palm Wonderful and Reardon follow from Brookfield. If the holding of this court is that a lack of direct competition makes it harder to show proximity under factor three, then it must be the case that showing direct competition is not, strictly speaking, required. But aside from the law, the most important countervailing argument here, or the most persuasive, is from Judge Otero's own writing. He did not confine his analysis to one of direct competition. He looked at differences in the intended purposes or use of our product versus their service. That's in the conclusions of law, paragraph 28. For example, Allstate was primarily, I'm quoting here, primarily a service monitoring driving performance and offering incentives for safe driving behavior. He also looked at differences in the implementation of our product versus their service. That's in the conclusions of law, paragraph 29. The district court's conclusion that there was ample opportunity to develop evidence of actual confusion was based, at least in part, on the duration of time that the marks coexisted. Does this overstate the opportunity to develop such evidence, considering that Kia's use of the mark during much of that time was minimal? I believe that raises a question which there's no basis to answer in the record. The way that consumer surveys are used, and of course there was no consumer survey adduced in this case, it is not necessary to debate about whether you have two months versus three months or nine months of an Allstate desk in a Kia dealership in 29-odd locations around the United States. The suggestion that we needed an empirical study rather than a consumer survey to show evidence of actual confusion I think puts this court on a fool's errand, especially given the record in Judge Otero's not clearly erroneous fact findings. If I may, the rest of Judge Otero's fact findings, in particular paragraphs 21 through 37, and the conclusions of law, paragraphs 25 through 35, again, I meant what I said. The most persuasive counterargument here is simply to read what he wrote. He considered numerous factors beyond competition. The jury was instructed, right? The advisory jury, yes. So did Judge Otero apply any different law than what the jury was instructed on? Allstate believes so. I disagree. Allstate's explanation of why Judge Otero varied from the jury instruction is because they repeatedly argue that although his conclusions of law accurately, properly recite the law of this circuit, he then, if you look at what he actually did, didn't follow the law. And that brings us back to the standard of review here. Since Levi Strauss on this court, the Ninth Circuit has been very, very clear that the likelihood of confusion is a mixed question of fact and law, which is governed by a clearly erroneous review. The one exception is if there is a statement of law by the district judge that is subject to a de novo review. Now, if you read Judge Otero's opinion here, every time he states the law of this circuit, he does so with quotes, with a pin site, and there's no argument that he got it wrong. The argument instead, and this is the same argument that the appellate made in Palm Wonderful. They do argue that he got it wrong. They are arguing, I mean, I'm not saying they're right about this, but Allstate is arguing that he misapplied the sleek craft factor. So I don't think that a district court inoculates themselves by just putting in quotes of the law and then misapplying it, if that's what happened. I completely agree with Your Honor, but the distinction is, if it's a de novo review of a statement of law, if the subsequent question is, did the district court then apply the law properly for a multi-factor sleek craft inquiry, that is not a de novo review. That's a clearly erroneous review. Well, it is, unless we've said you can't actually, that's what my question to Allstate was, unless the Ninth Circuit has said you can't consider the factors that were considered, and I don't view the law as precluding that. But if Allstate were right, that the law precludes that you can consider these factors, and what he did consider was not encompassed within those factors, that would seem to me to be a misapplication of the law that we would be able to review de novo. Sure. I think Your Honor may be alluding to the consideration of the international registration class issue. Well, I think that was one of them, but also the comparison. I mean, everything that falls within the proximity of the goods is what I understand. Sure. Well, Mike, for example, the district court said that Allstate's drive-wise was a service and Kia's drive-wise was a product. And so what makes one a service and the other a product? Couldn't we just as easily label them both a product and both a service? And if the district court was wrong to label one a service and the other a product, would that undermine the court's overall conclusion? If this court made a decision that Judge Otero's finding that Allstate had a service and we had a product was clearly erroneous, yes, I think that would absolutely factor into Your Honor's decision. However, I think that gives short change to Judge Otero's findings here. It wasn't just product versus service. It was also that theirs is a passive usage-based monitoring service, which has the benefit of If I'm understanding your argument, you're putting the law here and then the things that you're saying are clear error. You're sort of saying, well, yeah, those are factual things and it would have to be a clear error as opposed to de novo up there. That's right. I mean, I also noticed that the district court emphasized the stark difference in price between the two products, but the price is already considered as part of another factor. That was when he was saying the relatedness of goods, said there's a stark difference. But then the price is already considered as part of another factor, the degree of care consumers are likely to exercise. So do we have precedent suggesting the price comparison is relevant to more than one of the sleek factors? Could that be legal error? It could be, although I would have a hard time imagining that. I'm not aware of any case law authority cited by either side to ascribe legal error to that. More importantly, and this I can keep going on the failure to consider the complementary issue, the class of purchasers, the overlapping features versus similarity. Sleek craft factor three asks the relatedness or proximity of the goods. In paragraphs 21 through 37 of the fact findings and 25 through 35 of the conclusions of law, Judge Otero goes through that analysis in some detail. Just to take your Honor's example, the fact that all states' smartphone monitoring app, which has the benefit of possibly reducing your premiums, is free, and the fact that Kia is offering a hardware software built into the car, $1,000, $2,000, $3,000 option that you have to purchase when you buy the car, that speaks to the class of purchasers. That also speaks to the complementary or lack of complementary nature of the products. And I have to say, I heard the exchange earlier about whether these products are complementary. They absolutely are not. And not only did Judge Otero not fail to consider the complementary issue, he expressly considered it, but his finding is one that all states doesn't like. He found that all states' DriveWise monitoring app was complementary to an insurance policy. He found that Kia's DriveWise autonomous and semi-autonomous vehicle control system was complementary to the purchase of a car. That makes perfect sense. A piece of chalk is complementary to your purchase of a pool cue. A ski binding is complementary to your purchase of a ski. But whether there's any complementary relationship between our clients' respective offerings doesn't make any sense. Let's say if an advisory jury, if, all right, I'm looking at DriveWise and one's got a space and the other doesn't. Okay, so it's not even like drive right, drive, you know, it's like just the space. If the jury looked at that and said, okay, the space is just, that doesn't help at all. And they looked at the same, listened to the same testimony that Judge Otero listened to and said, yeah, I think that Kia did this on purpose, that they wanted to confuse people, and they, you know, all of that could, if they viewed the evidence that way, which would be different than Judge Otero viewed it, could they have easily jumped to that there was confusion? Is that a pretty direct route to finding confusion under the case law? No, Your Honor. I think that doesn't give credence to the sleek craft multi-factor inquiry. Well, but if I'm trying to understand what the jury did, if they just basically looked at it that way and said, those are exactly the same names, there's only a space, and we think that Kia knew what it, you know, that Kia had a bad intent, knew what it was doing, and wanted to, would that, could that be an explanation for how they all agreed that it was Kia? You're saying that's not a good reason, but can it be an explanation? In fact, I don't, I see I'm out of time. May I respond to Your Honor's question? Yes. I don't intend to be saying that that's not a good answer. What I intend to be saying is we have no idea if that's what the advisory jury did here, and that's because they were given a single, large, overarching question, and the question of intent is a particular factual question embedded in with the many sleek craft factors. And that brings me to a nice place to end, which is the supposed legal error of Judge Otero not factoring in the presumption. Judge Otero expressly acknowledged the presumption of intent case law of this court. He then, and I am reading from him, he did not disregard that presumption. He, in fact, made fact findings which made the presumption, it did not carry the day. Quote, there is no dispute that Kia was fully aware of Allstate's trademark registration and use of the time it adopted the drive-wise name. Here, however, there is no need for the court to presume or infer as to Kia's intent in selecting the mark. Kia independently derived the name, and he goes on from there, citing the record in the case and his not clearly erroneous fact findings. In arguing to the- Which number is that? That is paragraph 38 of the conclusions of law. That is record evidence page 19, Your Honor. And I actually, when I was preparing for this argument, a part of me thought that Allstate may have just simply misunderstood the writing of the judge.  But here, I don't need that presumption, which is to say I'm disregarding it. I think that's a misreading of what Judge Otero did. He acknowledged the presumption, and then he went straight to the evidence, and he made his finding about Kia not having an intent to deceive consumers. I've exceeded my time. Thank you for the court's attention. Thank you. I'm going to try to cover a lot of ground quickly. Just following up on that intent argument, the important point there is the law in the Ninth Circuit is it's at the time of the adoption. So Judge Otero's analysis, they may have come up with this on their own and then later found out about Allstate and then adopted the mark, that's the key point. He misses where he's looking at when do I apply the presumption. He's saying I don't have to apply the presumption because they came up with it on their own. The law is if they adopted it knowing about it, you have to apply the presumption. We don't believe he did that. On the three factors on the proximity, I just want to read you a couple of quotes, and this is from Judge Otero. Both products, both DriveWises, function as ways to improve driver safety. That's in the record at ER-691. Both are in some way related to improving driver safety. That's ER-19. To say that these are not complementary products is, I think, a stretch by the judge's own factual findings in this case. It seems like you're stretching that a little bit, though. You've got a whole bunch of things. Your rearview mirror is designed to protect safety. But it doesn't beep at me when I'm doing something I shouldn't be doing. I understand that, but I'm just saying it feels like that's sort of a selected quote. But anyway, keep going. Yeah, and I will just to compare the Ninth Circuit cases in this. Yes, there are differences. These are not identical, and I'm not trying to argue they are. But I submit that other Ninth Circuit cases that found that the products were proximate, such as DreamWorks, where science fiction conventions were found the same as movie studios, or Team Gordon, where racing bicycles were similar to energy drinks, or Fleischmann, where beer was considered the same as whiskey. These are no further apart. I'm not saying that this is a tire and a rearview mirror. I'm saying these are two things that beep at you when you're doing something unsafe in a car. And I think there's a real, and the advisory jury agreed with this, there's a real concern that maybe somebody less sophisticated. We had ten people in that courtroom who decided this issue. Nine of them went our way. One of them went their way. And I think the person that went their way is an extraordinary observer. I think the nine normal consumers who may not have the education level. Article III authority, that's another difference, too. What's that? And he has Article III authority. And he has Article III authority. I grant him that. And I don't grant him that. Somebody else granted him that. But, yes, he certainly does. But I think when you look at what would an ordinary observer do here, there's real concern. And our client isn't altruistic on this, but there's concern that somebody's going to get in a car and think they have one thing and not the other because they see DriveWise in their car. They buy a DriveWise Kia piece and think they have Allstate insurance. Let me ask you this. I'm trying to get my arms around really what you're trying to say here. I see my time's up. Who's going to be confused? Isn't the only one that's potentially going to be confused is someone who buys a Kia? Someone that buys a Kia and or someone who buys Allstate insurance. Why is somebody who's going to buy Allstate insurance who doesn't have a Kia going to be confused? Well, because, let's say, for example, you see it on TV that Kia's got DriveWise. Or they go to a dealer and they look at a Kia before they go and buy a Honda. And they say, oh, that DriveWise thing is pretty neat. Oh, I can get that through Allstate? Well, it's free. I'm going to take that. Now I've got DriveWise. There's no confusion there. Well, no, there is confusion. If they think they're getting the same features that they saw when they went into that showroom and saw those neat features on that Kia that they test drove. I mean, both companies are putting Kia in the automobile. It seems to me Kia's going to get you business. Well, that's not what we want in trademark law, Your Honor. We don't want that confusion that's causing business. And it's funny you say that because one of the marketing people at Allstate said, well, maybe if we get the name out there more it will even be better. That's not what trademark law is meant to protect. I understand that. But isn't really looking at this case, the likelihood of confusion is really the Kia buyer? I think it's both ways, Your Honor. I think it's both ways. I do. Thank you, Your Honors. Thank you both for your helpful arguments in this matter. It will stand submitted, and this court will be in recess until tomorrow morning at 9 a.m. Thank you. All rise.
judges: Fisher, Callahan, Nelson